UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VITALIA MERO, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 8363 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| J. C. PENNEY CORPORATION, INC. and THE FEIL ORGANIZATION, INC. | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Vitalia Mero brought this suit in the Circuit Court of Cook County, Illinois, against J. C. Penney Corporation and the Feil Organization, alleging negligence in connection with a slip and fall at the J. C. Penney store at North Riverside Park Mall in North Riverside, Illinois. Doc. 1-1. J. C. Penney removed the suit under the diversity jurisdiction. Doc. 1. Mero's claims against J. C. Penney recently were stayed due to its bankruptcy proceedings. Docs. 45, 47. Feil moves for summary judgment. Doc. 35. The motion is granted.

**Background**

The court recites the facts as favorably to Mero as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

Mero's fall took place at the J. C. Penney store at 7501 N. Cermak Road, North Riverside, Illinois, which is the address for the North Riverside Park Mall. Doc. 44 at ¶¶ 1-2. According to Feil, at the time of Mero's fall, it did not own, lease, manage, maintain, or control the store and did not contract with any entities to perform services at the store. Doc. 41 at ¶¶ 5-

1

10. In her Local Rule 56.1(b)(3)(B) response, Mero contests Feil's assertion, citing these two pieces of evidence: (1) a screen capture of Feil's website, which includes "North Riverside Park Mall" in a list of Feil's properties, *id*. at ¶¶ 5-9 (citing Doc. 41-3 at 2); and (2) a one-page excerpt of a North Riverside Park Mall leasing brochure, which has Feil's name and logo but does not mention J. C. Penney, *id*. at ¶ 10 (citing Doc. 41-5). In her Local Rule 56.1(b)(3)(C) statement of additional facts, Mero supports her assertion that Feil exercised some form of control over the J. C. Penney store with three additional pieces of evidence: (3) a screen capture of the North Riverside Park Mall website, which has Feil's logo, Doc. 44 at ¶ 5 (citing Doc. 41-4); (4) a complete copy of the above-referenced leasing brochure, *id*. at ¶ 8 (citing Doc. 41-10); and (5) a letter from North Riverside Park Associates, LLC, signed on the sender's behalf by the person who also serves as Feil's CEO, asking J. C. Penney Properties, Inc. to agree to extend a "Reciprocal Operation and Easement Agreement" between the two parties, *id*. at ¶¶ 6-7 (citing Doc. 41-9). The letter does not describe the terms of the easement.

## Discussion

The parties agree that Illinois law governs this suit. *See Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). Under Illinois law, a "plaintiff … who alleges that the defendant was negligent must show a duty owed by the defendant, a breach of that duty, and injury that was proximately caused by the breach." *Ibid*. Feil seeks summary judgment on the ground that it owed no duty to Mero. Doc. 35 at 3-4. "Whether a legal duty exists is a question of law to be determined by the court." *In re Estate of Powell*, 12 N.E.3d 14, 20 (Ill. 2014); *see also Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (same).

"The touchstone of [the] duty analysis [under Illinois law] is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the

defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006); *see also Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1123 (Ill. 2002) (same). Pertinent here, "[i]t is well settled in Illinois that a [lessor] is not liable for injuries caused by a defective or dangerous condition on premises leased to a [lessee] and under the [lessee]'s control." *Gilley v. Kiddel*, 865 N.E.2d 262, 266 (Ill. App. 2007); *see also Giger v. Mobil Oil Corp.*, 823 F.2d 181, 183 (7th Cir. 1987) (referring to "the general rule in Illinois that a landlord is not liable for injuries on premises leased to a tenant and under the tenant's control") (internal quotation marks omitted); *Lamkin v. Towner*, 563 N.E.2d 449, 453 (Ill. 1990) ("[W]e conclude that without evidence of the [lessor]'s control of [the lessees'] premises, there is no common law liability [on the lessor] for [the lessees'] injuries."). Exceptions to the general rule apply where: "(1) a latent defect exists at the time of the leasing that the [lessor] should know about; (2) the [lessor] fraudulently conceals a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the [lessor] has contracted by a covenant in the lease to keep the premises in repair; (5) the [lessor] violates a statutory requirement of which a [lessee] is in the class designated to be protected by such requirement; or (6) the [lessor] voluntarily undertakes to render a service." *Gilley*, 865 N.E.2d at 267 (internal quotation marks and citation omitted); *see also Giger*, 823 F.2d at 183 (referring to the first of those exceptions).

Mero fails to establish that Feil owed her a duty under Illinois law. Her evidentiary materials show, at most, that Feil leased to J. C. Penney the portion of the mall where the store is located and where she fell. As just noted, however, Illinois law as a general rule does not hold a lessor liable for injuries caused by dangerous or defective conditions on property leased to and

3

controlled by a lessee. *See Giger*, 823 F.2d at 183; *Lamkin*, 563 N.E.2d at 453; *Gilley*, 865 N.E.2d at 266.

  Nor do Mero's evidentiary materials establish any of the exceptions to the general rule. The first four—(1) the screen capture of Feil's website listing the mall as an available property, Doc. 41-3 at 2; (2) the one-page excerpt of the mall's leasing brochure, Doc. 41-5; (3) the screen capture of the mall's website, which has Feil's logo, Doc. 41-4; (4) the complete copy of the leasing brochure, Doc. 41-10—do not mention J. C. Penney. The fifth piece of evidence— a letter signed by Feil's CEO referring to an easement between North Riverside Park Associates and J. C. Penney Properties, Doc. 41-9—does not describe the easement and thus sheds no light on any involvement Feil might have had with the J. C. Penney store. Accordingly, Mero's evidentiary materials do not show that Feil: (1) knew "a latent defect exist[ed] at the time of the leasing that [J. C. Penney] should know about"; (2) "fraudulently conceal[ed] a dangerous condition"; (3) knew a nuisance existed on the property; (4) "contracted by a covenant in the lease to keep the premises in repair"; (5) "violate[d] a statutory requirement" that bestowed protection upon J. C. Penney; or (6) "voluntarily undert[ook] to render a service." *Gilley*, 865 N.E.2d at 267 (internal quotation marks omitted). It follows that Feil did not owe Mero a duty under any of the exceptions to the general rule described above. *See Lamkin*, 563 N.E.2d at 453 ("Absent any evidence to the contrary, therefore, we conclude that the [lessor] relinquished all control of the leased premises in executing the leases for appellees' tenancies and, with it, any potential common law liability for appellees' injuries.").

**Conclusion**

Because Mero cannot establish that Feil owed her a duty, her negligence claim fails. *See Piotrowski*, 842 F.3d at 1038. Feil's summary judgment motion therefore is granted.

August 3, 2020

_____
United States District Judge